## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:22-CV-00562-RGJ

**RONALD OLSON**                                                                                      **PLAINTIFF**

**VS.**

**LOWE'S HOME CENTERS, LLC**                                                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Third-Party Defendants DePuy Synthes, Inc., DePuy Synthes Products, Inc., DePuy Synthes Sales, Inc., Synthes Products USA, LLC, and Synthes USA Sales, LLC (collectively "DePuy Synthes") have filed a Motion for Qualified Protective Order seeking permission to conduct *ex parte* communications with Jon Brandon Carlson ("Dr. Carlson"), who is Plaintiff Ronald Olson's ("Olson") treating orthopedic surgeon. (DN 38). Defendant Lowe's Home Centers, LLC ("Lowe's") was the only party to respond. (DN 44). This matter has been referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) for resolution of all non-dispositive matters, including discovery issues. (DN 9).

This is a slip-and-fall personal-injury action filed by Olson against Lowe's. (DN 1-1). Lowe's later impleaded Depuy Synthes, alleging that its orthopedic hardware implanted in Olson's leg after the fall was defective and contributed to Olson's injuries. (DN 18, at PageID # 125). Lowe's also brought third-party claims against Dr. Carlson, University of Louisville Hospital, and UofL Physicians for medical negligence during Olson's first surgery following his fall.[1] (*Id.* at PageID # 119).

---

[1] Lowe's has moved to voluntarily dismiss its claims against Dr. Carlson and the University of Louisville institutions (DN 31), but the Court has not yet ruled on its motion.

In the instant Motion, DePuy Synthes argues that, to develop its defenses in this matter, it needs discoverable information in Dr. Carlson's possession, some of which could include Olson's personal health information. (DN 38, at PageID # 342). Because Olson may conduct informal interviews with Dr. Carlson, DePuy Synthes contends, allowing it to have similar communications with the surgeon would give the parties equal access to this discovery. (*Id.*). DePuy Synthes further states that Olson has no objection to the qualified protective order ("QPO"). (DN 45, at PageID # 378). In support of its Motion, Depuy Synthes relies on a 2015 decision of the Supreme Court of Kentucky, *Caldwell v. Chauvin*. 464 S.W.3d 139 (Ky. 2015). The *Caldwell* court upheld the trial court's decision permitting defense counsel in a medical malpractice action to contact the plaintiff's treating physician *ex parte*. *Id.* at 143.

In its response, Lowe's emphasizes that the *Caldwell* court allowed *ex parte* communications with the patient's treating physician only after distinguishing the physician's role as a fact witness instead of an expert witness. (DN 44, at PageID # 363). Lowe's asserts that because Dr. Carlson intends to testify about medical causation at trial, he would be considered an expert witness under Kentucky law. (*Id.* at PageID # 365). In support of its contention, Lowe's points to Olson's interrogatory response in which he indicated that "Dr. Carlson will testify this treatment is directly related to Plaintiff's fall." (*Id.* at PageID # 364).

DePuy Synthes, in reply, contends that the expert witness exception to physician *ex parte* contact is limited to physicians retained as expert witnesses. (DN 45, at PageID # 378). It counters that since Dr. Carlson has not been disclosed as a Rule 26(2)(B) expert or retained as an expert by Olson, *Caldwell* supports a finding that Dr. Carlson is a fact witness. (*Id.*). In addition, it argues that Lowe's lacks standing to object to the QPO as "[a]ny potential objection to defense counsel meeting with a treating physician must lie with the party representing the plaintiff patient." (*Id.*).

As in most cases in which litigants oppose the issuance of QPOs like the one sought by DePuy Synthes, Lowe's objects to the *ex parte* nature of the request. But, as the *Caldwell* court noted, litigants have historically been permitted to conduct *ex parte* interviews with fact witnesses. *Caldwell*, 464 S.W.3d at 142-43. These interviews serve to curtail "litigation costs by allowing litigants to gauge the usefulness of a witness's potential testimony by interviewing the witness before paying for a discovery deposition." *Id.* at 143. Still, the contents of *ex parte* interviews with treating physician fact witnesses are nonetheless subject to federal limitations. Generally, under the Health Insurance Portability and Accountability Act ("HIPAA"), an individual's protected health information may not be shared. 45 C.F.R. § 164.502(a). However, the regulation provides for a "litigation exception" where disclosure is permitted "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order[.]" *Id.* § 164.512(e)(1)(i). The *Caldwell* court concluded that HIPAA does not prohibit *ex parte* interviews with treating physicians, but that HIPAA regulates the protected information that may be disclosed in such interviews. *Caldwell*, 464 S.W.3d at 153. The court required that, prior to seeking *ex parte* disclosure of protected health information, a party must first seek authorization from the trial court. *Id.* at 153. "Trial courts may satisfy HIPAA and authorize disclosure of the plaintiff's protected health information in an *ex parte* interview by entering an order that complies with 45 C.F.R. § 164.512(e)(1)(i)." *Id.* at 159-60.

As other courts in this District have noted, and as Lowe's emphasizes, "a critical distinction in determining whether to grant a Motion for Protective Order Allowing *Ex Parte* Communications with Treating Health Care Providers is whether the physicians to be questioned are serving as fact witnesses, or as expert witnesses. *Lawrence v. Paducah Ctr. for Health & Rehab. LLC*, No. 5:21-

CV-00092-BJB-LLK, 2022 U.S. Dist. LEXIS 67343, at *3 (W.D. Ky. Apr. 12, 2022); *see also Colston v. Regency Nursing, LLC*, No. 3:16-CV-50-GNS, 2017 U.S. Dist. LEXIS 181996, at *10 (W.D. Ky. Oct. 24, 2017); *Davidson v. City of Elizabethtown*, No. 3:16-CV-429-CRS, 2017 U.S. Dist. LEXIS 178131, at *6 (W.D. Ky. Oct. 26, 2017). In support of its argument that Dr. Carlson is an expert witness, Lowe's relies on another Kentucky case: *Graves v. Jones*, No. 2019-CA-0880-MR, 2021 Ky. App. Unpub. LEXIS 219 (Ky. Ct. App. Apr. 16, 2021). Lowe's contends that *Graves* supports its proposition that a treating physician who is expected to testify as to medical causation is an expert witness, not a fact witness. (DN 44, at PageID # 364).

The Court is not convinced that Dr. Carlson is an expert witness in this case. First, Lowe's applies the incorrect source of law for this issue. In federal diversity actions, federal law determines whether a witness is qualified to testify as an expert. *See Bock v. Univ. of Tenn. Med. Grp., Inc.*, 471 F. App'x 459, 461 (6th Cir. 2012). Second, even if Kentucky law applies, *Graves* is not persuasive. *Graves* does not discuss the differentiation between fact and expert witnesses in the context of *Caldwell ex parte* interviews; rather, the appellate court affirmed the circuit court's holdings on multiple issues, including its decision to permit a treating physician to testify. *Graves*, 2021 Ky. App. Unpub. LEXIS 219, at *20. Notably, the appellant unsuccessfully relied on a pre-trial order limiting any treating physician's testimony to factual findings. *Id.* at *20-21. The case briefly mentions that fact witnesses are prohibited from offering causation opinion testimony but does not go into further detail about what this type of testimony would include. *Id.* at *15. The instant case is distinguishable. It concerns whether Dr. Carlson is an expert witness for purposes of having *ex parte* contact with an opposing party, not for testimony. Moreover, the Court has not issued a pre-trial order limiting Dr. Carlson's testimony as the circuit court in *Graves* had done.

Rather than provide the Court with direction about how to determine the issue at hand, the *Graves* case discusses generalized statements of law.

Even though Dr. Carlson's testimony at trial would be limited to his treatment of Olson unless noticed as an expert, his expected testimony appears to be related to his treatment and diagnosis of Olson. There is no indication that Dr. Carlson would be relying on facts or information outside of what he obtained during and as a result of his treatment. Without more, the expectation that Dr. Carlson will state that his treatment was related to Olson's fall does not transform him into an expert witness.

Although not cited by either party, another judge in this District dealt with a similar issue in *Colston v. Regency Nursing, LLC*. 2017 U.S. Dist. LEXIS 181996. There, the defendant sought to conduct *ex parte* communications with the decedent's treating physicians who the plaintiff intended to call at trial. *Id.* at *1-3. Although the plaintiff did not respond to the defendant's motion, the court still analyzed the motion through the lens of *Caldwell*. *Id.* In the plaintiff's expert disclosures, she specified that the treating physicians were "not experts as contemplated by Rule 26 and not retained by [her]." Expert Witness Disclosure, *Colston v. Regency Nursing, LLC*, No. 3:16-CV-00050-GNS-CHL (W.D. Ky. Apr. 28, 2017), ECF No. 22. Nevertheless, she expected them to testify regarding the care and treatment they provided to the decedent as well as opine that "the cause of pressure wounds is unrelieved pressure" and "Urinary Tract Infections are frequently caused by incontinent bowel and bladder." *Id.* Applying *Caldwell*, the court authorized *ex parte* communications between the defendant and the decedent's treating physicians. *Colston*, 2017 U.S. Dist. LEXIS 181996, at *12.

As in *Colston*, Olson intends to call Dr. Carlson to testify but has not identified him as an expert witness nor retained him as such. *See Caldwell*, 464 S.W.3d at 157 ("[R]emoval of the

language permitting authorization of discovery 'by other means' vitiates *ex parte* interviews with physicians *retained as expert witnesses*.") (emphasis added). The *Colston* court granted the QPO despite the plaintiff's expectation that the decedent's treating physicians would testify as to medical causation. Similarly, the Court here determines that Dr. Carlson is a fact witness eligible for *ex parte* contact with DePuy Synthes.

DePuy Synthes' standing argument is also persuasive. The Court is not aware of any case law in which a party other than the plaintiff has objected to a QPO under similar circumstances. Indeed, although Lowe's insists that DePuy Synthes must discover Dr. Carlson's knowledge through traditional discovery methods, it fails to identify what harm it will incur from DePuy Synthes having *ex parte* contacts with Dr. Carlson. The fact that Olson, the party who could suffer any potential harm through these *ex parte* contacts, did not file a response to DePuy Synthes' motion further supports the Court's conclusion. Therefore, the Court authorizes Dr. Carlson to have *ex parte* communications with DePuy Synthes.

The Court has closely compared the proposed QPO (DN 38-1) filed by DePuy Synthes to QPOs issued by other courts in this District. *See Lawrence v. Paducah Ctr. for Health & Rehab. LLC*, No. 5:21-CV-00092-BJB-LLK, 2022 U.S. Dist. LEXIS 67343 (W.D. Ky. Apr. 12, 2022); *Colston v. Regency Nursing, LLC*, No. 3:16-CV-50-GNS, 2017 U.S. Dist. LEXIS 181996 (W.D. Ky. Oct. 24, 2017). The order set forth below closely tracks DePuy Synthes' proposed order, but alterations have been made by the Court to comply with HIPAA's privacy protections and *Caldwell's* guidance.

**IT IS THEREFORE ORDERED** that Third-Party Defendants DePuy Synthes' Motion for Qualified Protective Order (DN 38) is **GRANTED**. However, the Court declines to enter the

proposed order filed by DePuy Synthes (DN 38-1) and instead enters the Qualified Protective Order set forth below.

## **QUALIFIED PROTECTIVE ORDER**

**IT IS ORDERED** that counsel of record for DePuy Synthes may communicate *ex parte* with Dr. Carlson regarding such aspects of Olson's medical conditions, care, and treatment as are relevant or related to any claims or defenses asserted in this action. By entry of the instant Qualified Protective Order, Dr. Carlson is authorized to disclose to defense counsel, verbally and in writing, in the course of informal, private, *ex parte* interviews or communications, any and all of Olson's protected health information that is relevant or related to the claims or defenses asserted in this action.

**IT IS FURTHER ORDERED** that:

1. Olson's protected health information owned, maintained, or otherwise in the custody of Dr. Carlson that relates to the claims or defenses asserted in this action is discoverable.

2. Pursuant to 45 C.F.R. § 164.512(e)(1)(i) and applicable federal and Kentucky law, this Court issues the instant Qualified Protective Order authorizing, but not requiring, Dr. Carlson to disclose Olson's protected health information in the course of this judicial proceeding. Such disclosure may be made through informal, private, *ex parte* interviews or communications with counsel for DePuy Synthes. Neither Olson nor his legal counsel need be present for or participate in those communications.

3. Dr. Carlson is authorized to meet with and/or communicate with counsel for DePuy Synthes or its agents without first obtaining an authorization signed by Olson and without first providing notice to Olson or his counsel.

4. The parties shall mark as "confidential" all records and other information provided to them by Dr. Carlson and shall store all such records and information in a secure location.

5. The parties shall not use or disclose the records or other information provided to them by Dr. Carlson for any purpose unrelated to the instant litigation.

6. The parties to this action may negotiate additional terms to the instant Qualified Protective Order.

Copies:     Counsel of Record